## GRAY TOOL CO. v. HUMBLE OIL & REFINING CO.

### No. 12990.

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1951.

Homer T. Bouldin, Houston, Tex., for appellant.

J. Vincent Martin, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Its suit for patent infringement dismissed on motion for summary judgment, plaintiff is here insisting: that this is another of those all too numerous instances of the misuse of the summary judgment procedure to cut a trial short; that here, as so often before, it has served only to prove that short cutting of trials is not an end in itself but a means to an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through.[1]

Appellant points to the abortion, by failure to use it, of the great record of seven printed volumes, aggregating more than three thousand pages, accumulated in preparation for the trial on the merits of the issues tendered by the pleadings. Pointing, too, to the fact that the judgment, if it had been affirmed, did not dispose of, it only delayed, their determination,[2] appellant insists that this is a clearer case than Hawkin-

1. Colby v. Klune, 2 Cir., 178 F.2d 872; Doehler Metal Furn. Co. v. U. S., 149 F.2d 130 at page 135; Kennedy v. Silas Mason, 334 U.S. 249 at pages 256–257, 68 S.Ct. 1031, 92 L.Ed. 1347; Sartor v. Ark. Natural Gas Corp., 321 U.S. 620 at page 627, 64 S.Ct. 724, 88 L.Ed. 967; Peckham v. Ronrico, 1 Cir., 171 F.2d 653 at page 657; Whitaker v. Coleman, 5 Cir., 115 F.2d 305, 306, 307.

2. Novadel-Agene Corp. v. Penn, 5 Cir., 119 F.2d 764; Hawkinson Co. v. Dennis

son's was for the application of the principles there announced.

We agree both because, being a patent suit, this was, under the rules laid down in that case, not a case for the use of summary judgment procedure, and because, treating this as though it were an ordinary private law suit, the record wholly fails to support the court's conclusion that, as matter of law and not of fact, the defense of misuse of the patents had, in some degree, been made out.

 Upon the first point, what was said in that case of the misuse of summary judgment procedure in patent suits[3] was not said a's mere "shadow boxing in vacuo". It was said precisely and with the definite purpose to avoid just such misuse of it as is here presented. The use of it here for shortcutting the trial did not, it could not, accomplish that result, because it did not, it could not, dispose finally of the issues tendered. All that it could possibly accomplish was, 'by setting up a temporary road block, to postpone the determination of the merits of plaintiff's suit and thus cause the trial to drag its already slow length still further along.

Filed May 13, 1947, the complaint was that, with full knowledge of the inventions of plaintiff's patents obtained by consultation with plaintiff, defendant had deliberately, wrongfully, and persistently infringed them. The prayer was for a decree: adjudging plaintiff's patents valid and infringed; enjoining further infringement of them; requiring an accounting for gains, profits and advantages; and awarding damages, actually, exemplary, and statutory.

On December 20, 1948, more than eighteen months after the filing of the suit and the accumulation of the mass of matter, testimony, exhibits, admissions, etc, the record presents, the defendant, on the ground that plaintiff was here attempting to use the patents in suit to establish a monopoly on equipment not covered by the patents and that the defendant had already been subjected and would be further subjected to great expense in preparation for the trial moved, under Rule 56 of the Rules of Civil Procedure, for a summary judgment dismissing the complaint.

On January 24, 1949, plaintiff filed its answer, supported by affidavits, setting out that there were real and material issues of fact requiring hearing and determination on a trial and that the motion should be denied.

On April 1, the motion came on for argument, whereupon the defendant, as a part of its argument, filed a written statement which purported to show that its defense of patent misuse was established, as matter of law, by plaintiff's pleadings and admissions, and plaintiff, as part of its argument, filed a written statement in reply.

On April 19, nearly two years after the filing of the complaint, the district judge filed a brief memorandum, 92 F.Supp. 722, 726, to which was attached the statements

et al., 5 Cir., 166 F.2d 61; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, at page 493, 62 S.Ct. 402, 86 L.Ed. 363.

3. "A patent, however, is a grant from the government to run for a term fixed, and misuse of it would not, if proved, invalidate it. The only effect of the misuse would be to prevent the unrepentant wrongdoer from invoking the aid of a court. It is quite clear, therefore, that if summary judgment procedure is to be effectively used by an infringer to permit him to continue to infringe without accountability, the case for summary judgment must be made out clearly and beyond the peradventure of a doubt. * * *

"Finally, since this is a patent suit and as such there is a public interest involved, instead of being tried and determined piecemeal, as was attempted here, it ought to be determined as a whole on the issues of patent validity, infringement and misuse. Tried and determined as a whole, the questions raised upon the issue of plaintiff's unjust and unfair uses and practices in respect of the patent could then be considered in the light of the realities as to whether plaintiff has a patent and whether defendant has infringed it, and not, as was done on this record, by a kind of shadow boxing in vacuo." Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61 at page 63. Cf. Kennedy v. Mason, and Doehler v. U. S., note 1, supra.

of plaintiff and defendant above referred to. In it without pointing to any fact in the record in support of his general conclusion, he declared: "An examination and consideration of the record and defendant's contentions convinces me that defendant is right and that the record shows that plaintiff is, as defendant contends, attempting to establish a monopoly, *etc.*, or has done so * * * I think the record in this case shows it to be indisputably true that plaintiff is misusing the patents in suit [and the] Motion for Summary Judgment will * * * be granted."

It is quite plain that in so concluding and adjudging, the court erred. The premise, upon which defendant's statement, apparently adopted by the trial court as correct, and, therefore, the memorandum and order rest, is that plaintiff has judicially admitted, beyond its power to deny, and, therefore, the record establishes not as matter of fact but as matter of law, that plaintiff has been using its patents and was attempting in the suit to use them to prevent other manufacturers of like standard material from selling it to defendant or to others.

This premise finds no support in the record. There was no pleading or prayer that defendant be enjoined from purchasing from others. There was no evidence that it had ever objected to the sale of material by its competitors or taken any steps or action to prevent them from doing so. There was positive and uncontradicted evidence: that it had not been, and was not, interested in doing so; that its salesmen were carefully instructed to make use as far as possible of any available material their customers had on hand; and that its only purpose in bringing this suit was to prevent the defendant from infringing plaintiff's patents.

■ While there was evidence that plaintiff had not undertaken any comprehensive system of granting licenses, there was clear and positive evidence that this was not done in order to obtain a monopoly but for wholly different reasons, and there was evidence that plaintiff had offered licenses to defendant and others. The defense of misuse of patents, like other unclean hands defenses, is not, as defendant seems to think, a matter of the letter of bare bones facts: it is a matter of their spirit, the intent with which they are done. A judge may not, on a motion for summary judgment, draw fact inferences as to plaintiff's purpose or intention in respect to obtaining a monopoly. Such inferences may be drawn only on a trial.

■ Nothing in the pleadings, in the evidence given, or in the admissions made by plaintiff, established as matter of law that it was misusing its patents in an attempt to obtain a monopoly in violation of the applicable rule. Indeed, we are of the opinion that the evidence hardly tends to support such a finding, and that, if we were reviewing the finding as one of fact, we ought perhaps, in the present state of the record, to set it aside as clearly erroneous.

The case as a whole, made by the pleadings, the evidence, and the exhibits in the seven volume record, and by plaintiff's affidavits in opposition to the motion, is peculiarly one for determination, not by summary judgment but on the merits and by trial, if desired, "on oral testimony, with the opportunity to examine and cross-examine witnesses in open court * * * often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system",[4] including for many years, in this country, trials in equity.

As plaintiff presented its case below, and, as appellant, presents it here, defendant is not merely an infringer of the patents but an arch contriver in doing so, in that, under the seal of confidential disclosures, it deliberately went about to obtain information to more effectively pirate plaintiff's invention, with the result that, through the use of the information plaintiff has furnished it, defendant has itself obtained a monopoly in the field covered by plaintiff's patents.

It will not do to say, as appellee did below and does here, that this, as well as all else that plaintiff brings forward and relies on, is immaterial. If what plaintiff charges is true, defendant, in seeking a

4. Colby v. Klune, [178 F.2d 873] note 1, supra.

continuing immunity from suit, while it blithely continues to practice the arts of piracy, and in making broad its phylacteries, while pointing its finger at plaintiff as unclean, is not a Daniel come to judgment, but Satan quoting scripture to his purpose.

In such a situation, the court, instead of hurrying plaintiff out of court, his charges unheard, should have proceeded with the trial so that plaintiff could prove; the facts and circumstances surrounding the disclosures made to the defendant; the defendant's acts; whether plaintiff has valid patents, and whether they have been infringed by the defendant.

On that trial the defendant could have offered its evidence on the issue of misuse, and plaintiff could have offered its controverting evidence, showing its method of conducting its business, and whether or not as a matter of fact and intent, and not merely of accusation, it has used, or sought to use, the patent privilege wrongfully, to obtain a monopoly, and thereby drive from the field its competitors in the making of standard equipment.

The principle invoked by defendant and erroneously applied by the trial court is simple and plain, and, as properly applied, sound. The fallacy in defendant's statement, which the court below failed to see, is that, though in most of the cases defendant cited and relied on, the question of misuse was decided upon a hearing as a question of fact, the defendant presented it as though the findings were made as matter of law.

It is true that two of the cases defendant cites were disposed of on summary judgment. In one of them, however, Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 404, 86 L.Ed. 363, the question was settled as matter of law against the plaintiff by the terms of a written license with limiting provisions violating "the established rule that a patentee who has granted a license on condition that the patented invention be used by the licensee only with unpatented materials furnished by the licensor", comes into court with unclean hands.

In the other summary judgment case cited, Lincoln Electric Co. v. Linde Air Products Co., 6 Cir., 171 F.2d 223, the motion for summary judgment was supported by an affidavit, with no opposing affidavits filed, that by the method employed in that case the appellant had gained control of more than 50 percent of the welding business, and, in addition, that appellant was actively engaged in enforcing its patent rights against sellers of the unpatented elements charging them with contributory infringement.

The principle applied in all of these cases is that no patentee can license or refuse to license upon a condition that the licensee will, in the use of the unpatented materials, use only such material as it purchased from the patentee, nor can he accomplish or endeavor to accomplish this end by a course of business without the issuance of licenses.

This principle was first stated in its simplest form in a contributory infringement suit in connection with the granting of a restricted license, and it was for a time supposed to be applicable only to cases of contributory infringement. It was in Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371, that methods of obtaining a monopoly other than by a license upon condition, were first recognized. There, in a suit against a contributory infringer, the court held that the patent could be abused just as effectively when, by a deliberate plan or scheme, the patentee withholds licenses in order to bring about the same results, as to competition, which he could obtain by granting a written license with a condition, that the patented method may be used only with materials purchased from the patentee.

As a result of that case and the line of cases following, declaring that the effort by suit to stop contributory infringement is evidence of misuse, including particularly the Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, the doctrine of contributory infringement has been greatly narrowed, if not completely abolished in all cases where the holder

of a combination or process patent is also a seller of standard or unpatented material.[5]

This is not the case as to direct infringers. For, though contrary to what was at first apparently the general trend of opinion, it was decided in American Lecithin Co. v. Warfield Co., 7 Cir., 105 F.2d 207, and in Morton Salt Co. v. G. S. Suppiger Co., supra, that, where justified by the facts, the principle would be applied in the case of direct infringement, it has never been, it could not be, justly decided that the mere effort, as here, to prevent a direct infringement was in itself a misuse.

What the issue here comes down to is this, that in each case where the misuse of patent principle has been applied, it has been of the essence of its application that, whatever it takes in law, to constitute the misuse, be established as matter of law where the procedure was by summary judgment, or, as a matter of fact where it is by trial.

Plaintiff in this case has never sued a competing manufacturer. It does not threaten to do so. It has sworn positively, in its affidavits submitted in opposition to the motion for summary judgment: that it has never objected to anyone's buying from competing manufacturers; it does not object now; and that it has not sought, it is not seeking, nor will it seek, in any way, to prevent this.

The latest authoritative decision on this question, Linde Air Products Co. v. Graver Tank & Mfg. Co., D.C., 86 F.Supp. 191, 167 F.2d 531, and 335 U.S. 279, makes it abundantly clear that the issue of patent misuse tendered by defendant here was one of fact, and that there was no basis in the record for deciding it as matter of law.

The statement of legal principles, attached to the memorandum on which the judgment was based, purporting to show from the record that plaintiff's admissions made it guilty, as matter of law, of mis-using its patents, is not a correct statement of the law. Plaintiff was not required, as matter of law, upon condition of being unable to prevent direct infringement, to offer licenses to every manufacturer in the field. Nor was it required, as matter of law, without protest or self help, to stand helplessly by watching the defendant, simply because the constituent materials were unpatented and its actions, in setting up standard specifications for a completed product, were sufficiently bold successfully pirate plaintiff's inventions and obtain a monopoly of its own.

We are more than ever convinced that the rule this court laid down in the Hawkinson case is a wise and just one. We have no disposition to withdraw from, or modify it. We think this case peculiarly attests its wisdom.

After all, a suit for patent infringement is a suit on a government grant based upon a constitutional provision. Whenever a deliberate infringer seeks to escape the penalties of his violation of the Constitution and statutes of the United States governing patents, a court of equity should be patient enough to search out and determine the merits of the case. If, in doing so, it finds the patents valid and infringed, but finds also misuse in whole or in part of the patents, it should be adroit and astute enough to contrive and confect an equitable decree which will neither reward the plaintiff for his misuse or put a premium on defendant's wrong doing and hypocrisy.

Such a decree should, of course be so framed as that it will not permit an unreformed and unrepentant plaintiff to obtain the fruits of bringing a defendant to book for his wrong doing, unless and until proper amends are made by plaintiff for his own wrong doing. Equally, of course, a defendant's wrong doing in deliberately stealing the fruits of plaintiff's invention by permitting him, by the simple device of

---

5. Cf. Majority opinion, 320 U.S. 661, at page 669, 64 S.Ct. 268 at page 273, where it is said, "The result of this decision, together with those which have preceded it, is to limit substantially the doctrine of contributory infringement. What residu-um may be left we need not stop to consider." with what is said by Mr. Justice Frankfurter, dissenting, at pages 677 and 678, and by Mr. Justice Black, concurring at pages 672–673–674.

the pot calling the kettle black, to continue to escape accountability. In short, the decree should, if at all possible, be so drawn as to protect the public from the continuing wrong doing of the plaintiff in misusing its patents and the plaintiff and the public from the continuing wrong doing of defendant in deliberately pirating plaintiff's invention.

The judgment is reversed with costs to appellant, and the cause is remanded for further and not inconsistent proceedings.