**LOEW'S Inc., v. BAYS et al.**

**No. 14514.**

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1954.

———◆———

Earl T. Thomas, L. O. Smith, Jr., Jackson, Miss. (Wells, Thomas & Wells, Jackson, Miss., and Sargoy & Stein, New York City, W. C. Wells, III, W. C. Wells, Jr., Jackson, Miss., Edward A. Sargoy and John F. Whicher, New York City, of counsel), for appellant.

Phil Stone, Oxford, Miss., Walter P. Armstrong, Jr., Memphis, Tenn. (Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., of counsel), for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by plaintiff-appellant, hereafter referred to as plaintiff, a distributor of motion pictures, against the defendants-appellees, hereafter referred to as defendants, owners and operators of two motion picture theatres in Grenada, Mississippi, and based upon charges that, in connection with the operation of the theatres, defendants had entered into and engaged in a conspiracy to defraud plaintiff of the amounts justly due it under the terms of license agreements between plaintiff and defendants from pictures licensed to defendants, the suit was for damages, actual and exemplary.

The claim in general was: that from July 1, 1943, to February 14, 1952, the period in controversy, plaintiff licensed to defendants, under the respective copyrights thereof, numerous motion pictures; that a substantial number of such license agreements were what is known as percentage rental agreements which required defendants to pay, as the exhibition licensee, for a specified percentage of the gross box office receipts derived from the sale of admissions to the showing of such pictures; that defendants wilfully, intentionally, and deliberately conspired regularly to submit, or cause to be submitted, to plaintiff reports, falsely under-reporting the gross receipts therefrom; that plaintiff relied thereon to its damage, not only in accepting license fee payments for pictures already exhibited, but also in its subsequent dealings with defendants, including particularly further license agreements for additional percentage rental pictures; and that the result was that plaintiff was fraudulently induced to, and did, charge lower license fees for both "flat" and "percentage" rental pictures, than it otherwise would have done, to its actual damage as to each picture, as shown by Schedule "P" attached.

To the complaint filed February 14, 1952, defendants filed no answer either within the time required by the rules for answering or within the thirty days after March 6, allowed by order of the court.

Instead, the defendants, for the purpose and with the effect of taking into, and keeping in, their own hands the initiative in the case and of throwing and keeping the plaintiff off balance so that it could not take and assume its natural role as plaintiff, devised the grand strategy of swapping roles with the plaintiff by converting the attacker into the attacked.

Beginning its campaign of tactical offensive maneuvers, as shrewdly planned as they were brilliantly executed, on April 2nd, four days before its answer was due, with a motion for severance of claims, defendants followed this beginning by maintaining a continuous bar-

rage of motions,[1] dilatory and otherwise, and securing orders thereon. These did not abate or lessen until on December 18th, some eight months later, when, prevented, by orders allowed on motion, from taking the depositions of, and from otherwise obtaining discovery from, defendants, the plaintiff, unable to regain the initiative, indeed, like Alice, in a strange and modern wonderland of procedural innovations, unable while running at top speed to do more than stand still, found the defendants cast in the roles of Little Red Riding Hood and her badly used grandmother, and itself in the role of the wicked wolf. In that role, it was found guilty of having brought its action in bad faith and was adjudicated not only out of its cause of action but out of its good name as well.[2]

Appealing from the summary judgment thus entered against it, plaintiff is here insisting that, for the reasons it assigns, the case, sounding as it did in fraud, was not under any circumstances one for summary judgment, and, further, that whether this is so or not, certainly under the record made in this case the judgment on the motion may not stand.

In support of its position, appellant puts forward and vigorously argues three specifications of error:

1. The record discloses, on its face, the existence of bona fide issues of material fact, precluding an award of summary judgment.

2. The evidence does not support the finding of the Court below that the facts disclosed by the papers submitted to the court indicate that plaintiff-appellant never had good cause to believe that it had a claim against defendants-appellees.

3. The procedure adopted herein by the court below was erroneous in the further respect that plaintiff-appellant was denied any opportunity for discovery of evidence in support of its claim in the possession of the adverse party, despite its repeated requests therefor.

Under these specifications, the appellant points to its definitely alleged charge

---

1. A joint motion to dismiss for lack of jurisdiction; a joint motion for production of documents; a joint motion to compel answers to interrogatories and to vacate a notice of deposition and subpoena duces tecum; two successive joint motions to require further answers to interrogatories; a joint motion for summary judgment; three successive amendments to their motion for summary judgment, the first of which was coupled with an amendment to one of their motions to require further answers to interrogatories; and three successive sets of written interrogatories.

Plaintiff-appellant moved for additional time to prepare its answers to each of the three sets of written interrogatories served on it by defendants-appellees. It moved for production of documents by defendants-appellees and, after complying with the terms of the court's order of July 25, 1952, twice renewed its motion to require defendants-appellees to produce, only to have it denied in toto by the order from which this appeal is taken. Plaintiff-appellant served a notice to take the deposition of L. B. Bays with an accompanying subpoena duces tecum, but Bays' compliance therewith was at first postponed by order of the court and then rendered moot by the final order.

Plaintiff-appellant filed its first answers to defendants-appellees' first set of interrogatories on May 14, 1952, and again, with a corrected jurat by the notary public, on July 23, 1952. Plaintiff-appellant's answers to the second set of interrogatories were filed August 20, 1952, and amended answers to both sets on September 11, 1952. Its motion for an order postponing its time to file answers to the third set of interrogatories, until compliance had been had with its notice to examine the defendant-appellee Bays and final disposition had been made of its motion to produce, was still pending when the final order was entered.

2. In this that, stating in its decree that it was "of the opinion that the facts * * * failed to establish that plaintiff had at the time this suit was filed good cause to believe that it had a cause of action against defendants or any of them, and does not at the present time have such good cause, and that, therefore, there is no issue of fact as between plaintiff and any defendant to be passed upon by the court or a jury" the court summarily adjudicated plaintiff's action against it.

that defendants have engaged continuously since July 1, 1943, in a conspiracy to defraud it; that this conspiracy was carried out by misrepresenting and underreporting the gross receipts derived from sales of admissions to each of the motion pictures listed in Schedule "P" by at least the amounts stated there and by concealing from plaintiff the true receipts so derived; and that plaintiff did not discover the evidence of this conspiracy until 1951.

It points out, too: that the defendants filed no answer; that their motion for summary judgment set forth no evidence whatever by affidavit or otherwise to refute the allegations of the complaint; and that the motion was based solely upon plaintiff's answers to written interrogatories, later amended in some respects, which showed the difficulties attending "checking" the exhibition of pictures; that defendants had refused to submit to an independent audit; and that its claim was supported by the affidavit of one Harris, containing a full and complete statement of the circumstantial evidence in plaintiff's possession, showing or tending to show that the claimed fraudulent practices had been carried out. So pointing, it urges upon us that all that defendants have done to accomplish the claimed conversion of a fraud case, based in large part on circumstantial evidence, and, therefore, essentially a fact case, a case in which the trier of facts, examining each circumstance in the light of its setting and relation to other circumstances, determines whether as a whole a chain of evidence is forged, into a case where there are no disputed issues of fact, is merely to oppose to the plaintiff's pleadings, answers to interrogatories, and affidavits, the affidavit of the main defendant charged with fraud doing in this case.

It insists that this procedure and result, by which defendants, refusing and avoiding discovery and disclosure, are enabled to avoid disclosing the evidence in their possession, and having their consciences searched, and at the same time to obtain a summary judgment, is to convert a motion for summary judgment a procedural device designed to advance and promote the discovery of truth, into an engine for its suppression. Insisting that in the end, all that can be said of Bays' affidavits, on which defendants so strongly rely, in refutation of the affidavit of Harris offered by plaintiff, is that the facts stated in Bays' affidavit, if testified to, would raise issues of fact by furnishing bases for inferences different from the bases furnished by Harris' affidavit.

Calling vigorous attention to arguments in appellees' brief in which Bays' affidavits are analyzed in contrast to Harris', to demonstrate that there are no fact issues in this case, they urge upon us that the very necessity for such argumentation shows that the case is not one for disposition as matter of law but one bristling with facts and fact issues. Basing its case fundamentally on Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, quoting from our case of Coe v. Riley, 5 Cir., 160 F.2d 538, 540:

"Resolving of conflicts and ambiguities in a witness' testimony is not a function of the Court to be performed through the medium of summary judgments."

and planting itself strongly on the general principle that the movant for summary judgment has a heavy burden to show that he is entitled to summary relief, plaintiff cites a multitude of cases in support of the principles which it invokes.

In respect to that part of the decree which declares that plaintiff never had good cause to believe, and has not now good cause to believe, that it had a claim against defendants, appellant insists that the finding is simply not supported by the record but is a completely gratuitous questioning of plaintiff's good faith in bringing the action.

Further, it insists that putting forward, as a controlling factor in this case, the presence or absence of good faith on plaintiff's part in bringing the suit is to drag a red herring into it; that the con-

trolling question in the case is, has the defendant demonstrated as matter of law that there are no issues of fact to be tried.

Finally, bearing down heavily upon the procedure of depriving it of its opportunity to examine or obtain discovery from defendants, by which plaintiff is in effect pinioned and prevented from developing its case, appellant cites, as opposed in principle to the actions and orders below. Rule 56(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and Hummel v. Riordan, D.C., 56 F.Supp. 983.

Not going so far as to claim that a summary judgment is never proper in a fraud case, appellant does insist that it is certainly not proper in this case, in which, where critical facts are in possession of the party moving for judgment, and plaintiff is still vainly seeking to get at those facts by deposition and discovery procedure, the court rings the curtain down and brings the play to an end.

The appellees, exhibiting in their presentation by brief the same grace and skill which distinguished their conduct of the trial below, in opposition to appellant and its positions, move their forces into action. They concede, as they must, that the general principles invoked by appellant, upon the authority of the decisions they cite, are sound. Taking the moving oar, they insist that a fraud case is peculiarly one for the use of summary judgment for the reason that these statements as to fraud in the complaints are made only on information and belief, and since fraud is never presumed but must always be proved by clear and convincing evidence, Saenz v. Kenedy, 5 Cir., 173 F.2d 417, it is most appropriate that in a summary judgment proceeding, the veil of illusion created by the complaint should ﹅ be pierced to let the true facts appear. Conceding that Bays, as a defendant, could not by an affidavit establish as matter of law the facts sworn to by him, because his interest would make his credibility a matter for the finder of facts, and, therefore, a fact issue, they argue

that Bays' affidavit puts forward no fact which is subject to dispute or question, but merely reveals undisputed or indisputable facts which overthrow and destroy the allegations of the complaint and the apparent prima facies of Harris' affidavit. Insisting that the court was well within its discretion in denying discovery and in refusing to permit the plaintiff to take defendants' deposition while at the same time proceeding with the summary judgment, they urge upon us that the case was properly heard and properly determined below under the summary judgment rule, and the decisions construing and applying it.

As to the finding of the court, that the suit was brought without good cause, appellees insist that the court is merely complying with the rule laid down in Columbia Pictures Corp. v. Rogers, D.C., 81 F.Supp. 580, 583, where the question was whether there was a good faith claim to the jurisdictional amount of $3000, that the inquiry in the suit is "do they have claims against the defendants in the respective cases, which they assert in good faith"?

A careful consideration of the record in the light of the arguments and briefs, convinces us that appellant has the right of it. While, in the conception and execution of its strategical plan, this case exhibits more finesse than was exhibited in those cases, in its general over-all aspects, the planned action, and the procedure it followed, it is strongly reminiscent of the procedures adopted and condemned in two patent cases decided by this court, Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61, and Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365, 367. In those cases, particularly the Gray Tool case, the defendant, seizing upon the device of counter-charging the plaintiff with misusing patents, was able to induce the trial court to turn completely away from the charges of patent piracy and infringement to put the plaintiff out of court, not permanently as here, but at least for the time, on grounds and for reasons not properly determinable in a

summary judgment motion. In the Gray case, this court said:

"The defense of misuse of patents, like other unclean hands defenses, is not, as defendant seems to think, a matter of the letter of bare bones facts: it is a matter of their spirit, the intent with which they are done. A judge may not, on a motion for summary judgment, draw fact inferences as to plaintiff's purpose or intention in respect to obtaining a monopoly. Such inferences may be drawn only on a trial."

It was in that case, too, that we said what is eminently true of this one:

"Plaintiff is here insisting: that this is another of those all too numerous instances of the misuse of the summary judgment procedure to cut a trial short; that here, as so often before, it has served only to prove that short cutting of trials is not an end in itself but a means to an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through."

It will serve no useful purpose for us to analyze the answers to the interrogatories, Harris' affidavit, or that of Bays. Neither will it be of any avail to assemble and quote from, or even to cite, the mass of cases which, while recognizing the value of the summary judgment procedure when properly used, as clearly establish that it may be, and often has been misused.

Nor need we do more than state the fact, without going into detail about it, that while the district judge has discretion under Rule 56(f) and otherwise, to control and guide the taking of testimony, the answering of interrogatories, the making of discovery, this discretion may never be exercised, as here, to deprive a plaintiff, who has charged a defendant with working a fraud on it over a long period of years, of the opportunity of searching a defendant's mind, memory, and conscience, while proceeding to summary judgment on defendant's motion before giving plaintiff an opportunity to so search out the truth.

The summary judgment was improperly granted. It is reversed and the cause is remanded for further and not inconsistent proceedings.