The **ALABAMA GREAT SOUTHERN RAILROAD COMPANY**

v.

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY.**

No. 15449.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 16, 1955.

Joseph F. Johnston, Leigh M. Clark, Birmingham, Ala., Sidney S. Alderman, Vice-President and Gen. Counsel, Henry L. Walker, Gen. Sol., Southern Railway System, Washington, D. C., Cabaniss & Johnston, Birmingham, Ala., of counsel, for appellant.

White E. Gibson, Birmingham, Ala., Robert E. Steiner, Jr., Robert E. Steiner, III, Montgomery, Ala., Charles H. Eyster, Decatur, Ala., J. L. Lenihan, Louis-

ville, Ky., Steiner, Crum & Baker, Montgomery, Ala., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

This suit, filed May 6, 1952, was brought to enforce the provisions for indemnity of what is known and called the Standard Detour Agreement, adopted, promulgated, and in use for years by the Association of American Railroads.

The prayer was for an order requiring the defendant to proceed to arbitration as required by paragraph 7 of the agreement, and, in the alternative, for the entry of a judgment declaring that, under paragraph 4[1] of the agreement, defendant is liable to indemnify plaintiff against, and save it harmless from, all liability or claim for delays, losses, damages, etc., which the plaintiff has incurred or will incur as a result of a collision occurring on plaintiff's line between defendant's train, then being operated over it under the detour agreement, and a passenger train belonging to and being operated by plaintiff.

On June 12, and before defendant had answered, plaintiff apparently abandoned its effort to obtain arbitration. Alleging: that there was no genuine issue between the parties as to any material fact;[2] and that plaintiff was entitled to judgment as matter of law; and, invoking the jurisdiction of the court as a court, it sought a summary judgment for the declaratory relief prayed for in the complaint.

The defendant, admitting the execution of the detour agreement, the occurrence of the collision with plaintiff's train while defendant's train was being detoured over plaintiff's lines, and that large and heavy losses and damages had occurred, denied, for the reasons set out by it at length, that plaintiff was entitled to any of the relief sought. In addition,

---

1. "The Home Company shall not be held liable for or on account of any loss, damage, or delay, to the trains, engines, cars or other property of any kind of either company, nor to freight, baggage or other property of any kind carried in or upon such trains, engines, or cars, nor for or on account of any injury to or death of passengers or employees of either company, or for or on account of any injury to the person or property of any other individual or individuals, company or companies, corporation or corporations whatsoever, which may be incurred or sustained by reason of such trains being detoured, or by reason of such trains being delayed in such detouring, in whatever manner the same may be caused or occasioned, whether by or through the negligence of the Home Company, its agents or servants, or by reason of defects in tracks, structures, or facilities furnished by the Home Company, or otherwise, it being understood and agreed that all risk of such delays, loss, damage, injury and death shall be and is hereby assumed by the Foreign Company, and the Foreign Company shall and will hold harmless the Home Company from and against all liabilities or claims for all such delay, loss, damage, injury and death, and shall and will execute and deliver, or cause to be executed and delivered, to the Home Company, upon request, a full and complete release, satisfaction and discharge of all claims therefor, and will pay, or cause to be paid, all costs and expenses incurred by either Company in the clearing of wrecks and repairs to equipment, track and property in which by reason of detour movements covered by this agreement the engines, trains, or cars of the Foreign Company are concerned, expenses and attorney's fees incurred in defending any action which may be brought against the Home Company on account of any such claim or liability and any judgment which may be rendered against the Home Company on account thereof. The Foreign Company shall pay all fines, penalties, costs and expenses imposed upon or incurred by the Home Company by reason of any violation by the Foreign Company of the Safety Appliance or other State or Federal Laws, and hold the Home Company harmless therefrom."

2. For the purpose of the motion, plaintiff admitted that the facts and circumstances in respect to the detouring and the collision are as stated in Interstate Commerce Report No. 3427, dated Jan. 16, 1952, and filed as Exhibit A to the motion.

it filed a counter-claim alleging that the collision was the result of plaintiff's negligence, simple or wanton, and prayed for a judgment declaring that plaintiff is liable for all damages caused to, or claimed of, defendant as a result of the collision.

Thereafter, on August 29, 1952, the defendant, opposing plaintiff's motion for summary judgment but alleging that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as matter of law, moved for a summary judgment on its counter-claim.

The district judge, upon full consideration of the pleadings, affidavits, and other matters presented in support of the respective motions, denied plaintiff's and granted defendant's motion for summary declaratory relief, and plaintiff is here presenting five specifications of error.[3]

Because the district judge, in a thorough and well considered full scale opinion,[4] set out the pleadings, the critical clauses of the agreement, and what he considered to be the uncontroverted facts, and fully canvassed the points made in favor of and against the claims of each contestant, and we can state our own views in terms of agreement or disagreement with the views of the district judge, our difficulties are greatly reduced, our labors greatly lessened.

The district judge, understanding and appreciating the nature and scope of the claim made by plaintiff in respect to the construction and application of the agreement, stated and canvassed the issues with it fully in mind. The claim was: that the agreement was not one extorted from and imposed upon the weak by the strong and, therefore, to be construed and applied critically and grudgingly, to defeat it if possible; but was a remedial instrument, devised many years ago and employed continuously since by railroad corporations of equal stature and position to facilitate the exchange of detouring privileges and to take care of all contingencies arising thereout; and that it should be construed and applied liberally and broadly to give full effect to its principal apparent purpose. He, therefore, carefully stated and canvassed, as he saw them, the issues upon the construction and application, of the agreement, in the light of this claim, and dealt with them accordingly.

In substance, this is the way he stated the first one:

"Are the indemnity and exemption provisions applicable as contended for by defendant only when the losses and damages are proximately caused by the operation of the detouring train, or was "the descriptive phrase, 'in whatever manner the same may be caused' intended expressly to eliminate the restrictive requirement of proximate causal connection between operation of the detouring train and damages and to apply the indemnity and exemption provision to damages resulting, which would not have occurred but for the fact of the detour, the existence of additional hazards imposed by the very presence of a foreign train on the tracks in use even though the loss and damage directly resulted from the negligence of the indemnitee's own servants"?

---

3. These are:

"1. In interpreting the standard detour agreement as not imposing upon defendant the obligation to indemnify and exempt plaintiff against all damages resulting from the collision on Nov. 25, 1951.

"2. In holding that the detour agreement is void as against public policy, to the extent that it does impose upon defendant an obligation to indemnify and exempt plaintiff under the circumstances of this case.

"3. In finding that the collision was the result of wanton conduct on the part of plaintiff's operating employees.

"4. In making the finding that plaintiff's operating employees were guilty of wanton conduct, on motion for summary judgment without a trial of the issue.

"5. In rendering judgment for defendant and against the plaintiff on the counterclaim."

4. Alabama Great Southern R. R. v. Louisville & Nashville Railroad, D.C., 127 F. Supp. 363, 370.

The second was thus stated:

"Are the indemnity and exemption provisions intended to apply under any and all circumstances including those where the losses and damages are the result of wanton conduct of the Home Company's employees?"

The third, which was in large measure included, and dealt with, in the first two, was stated thus:

"Are the indemnity and exemption provisions void (1) as a matter of public policy; or (2) as ultra vires?"

Dealing with each of these questions in its turn and carefully considering the arguments and the many authorities put forward by each side upon the first question, the district judge, we believe correctly, rejected the narrower contention of the defendant, and held that the descriptive phrase in the contract, "in whatever manner the same may be caused", was inserted to insure against a narrow and limiting construction, that to recover the indemnity provided for, plaintiff must show in the technical legal sense proximate causal connection between the operation of the detouring train and the damages.

Upon the second question, he concluded upon the authority of Thomas v. Atlantic Coast Line, 5 Cir., 201 F.2d 167, in effect: that, while the language "whether by or through the negligence of the Home Company or otherwise", properly construed, covered simple negligence, it could not properly be construed as intended to extend, or as extending, to damages occasioned by willful conduct or wanton negligence; and, further, that if it could be said that the agreement purported to exempt the Home Company from liability for the consequences of a willful breach of duty or wanton negligence, it would to that extent be illegal.

Having thus correctly, we think, settled the validity and meaning of the contract, he came at last to the issue whether the record required a determination as matter of law, that the Home Company, through its employees, was guilty of wanton negligence, and resolved it by holding that it did.

Discussing the evidence, and we think evaluating it as a trier of fact would, instead of, as on the motion he was bound to do, determining merely its legal effect, the district judge found: that the facts compel the conclusion that the losses and damages sustained by both parties resulted from the wanton conduct of plaintiff's employees; and that it necessarily follows that, since the agreement provides neither exemption from nor indemnity for the consequences of wanton conduct, the plaintiff must bear its own losses and damages and the defendant must recover of plaintiff all of the losses and damages it has sustained or may be called upon to sustain.

He rejected plaintiff's claim, not argued before him, and, we think, abandoned here and there, that it was entitled to an order for arbitration. He did this on the ground which we think is supported by reason and authority, that since the contract did not extend to, or cover, wanton conduct, and both plaintiff and defendant insisted that the matters at issue should be determined by summary judgment, as matter of law the provisions for arbitration had no application to the case.

Upon full and careful consideration of the views announced by the district judge, in the light of the record and the exhaustive briefs of counsel for appellant and appellee, we find ourselves in general agreement with his expressed view that the detour agreement was valid and effective as to all losses and damages caused and occasioned by negligence or otherwise, except that its terms did not extend to or include wanton negligence or willful acts and that, if they did, the agreement would, to that extent, be illegal and unenforceable.

We are also in complete agreement with him, both for the reasons announced by him and because we think plaintiff abandoned his claim to arbitration, that

the arbitration clause is without application here.

 When we come, though, to the final question in the case, whether the district judge was right in holding that the proof showed wanton negligence as matter of law, we are constrained to declare that we are of the clear opinion that he erred in doing so.

While the district judge did recognize that as a general proposition the issue of negligence, including the related issue of wanton conduct, is ordinarily not susceptible of summary adjudication, he cited in support of his view, that, under the facts as he apprehended them, the question of wanton negligence was made out as matter of law, our case of Surkin v. Charteris, 5 Cir., 197 F.2d 77.

We think it quite clear, though, that that case is without application here. As we pointed out in the second appeal of Thomas v. Atlantic Coast Line, 5 Cir., 223 F.2d 1, generally speaking, and especially in Alabama,[5] inherent in wanton negligence is the idea of moral fault, arising from, a consciousness that the act done or omitted to be done would probably cause serious injury, and the doing or failing to do, the act, despite such consciousness, with reckless indifference to consequences. In short, in such a case, "The mental state of the person who did or omitted to do that which duty required in the premises * * * is the matter of controlling importance in cases of this character." Law v. Saks, 241 Ala. 37, 1 So.2d 28, 29.

In many recent cases,[6] where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, we have pointed out that and why the issues may not be disposed of on summary judgment. Other courts have done the same. In Subin v.

Goldsmith, 2 Cir., 224 F.2d 753, the majority opinion in a thorough going exposition of why a summary judgment should, and should not, be granted in cases of this general nature, collects and cites the controlling authorities.

We are of the firm opinion, therefore, that, while the district judge was generally right in his construction of the contract, and in the legal views expressed preliminary to applying them to the facts of the case, he erred in declaring the case to be one for summary judgment. Because he did, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

5. Cf. Feore v. Trammel, 212 Ala. 325, 102 So. 529, 533; Wunderlich v. Franklin, 5 Cir., 100 F.2d 164, 167.

6. Loews, Inc., v. Bays, 5 Cir., 209 F.2d 610, at page 614; Gray Tool Co. v. Humble, 5 Cir., 186 F.2d 365; Hyman v. Regenstein, 5 Cir., 222 F.2d 545. Cf. also what is said in Texas Co. v. Gianfala, 5 Cir., 222 F.2d 382.