**AUSTIN THEATRE, Inc., Plaintiff,**

v.

**WARNER BROS. PICTURES, Inc. (in dissolution), Comerford Theatres, Inc., Comerford Publix Theatres Corp., et al., Defendants.**

United States District Court
S. D. New York.
Dec. 30, 1955.

See, also, 19 F.R.D. 93.

Arnold Malkan, New York City, for plaintiff.

Kaye, Scholer, Fierman & Hays, New York City, for defendants Comerford Theatres, Inc. and Comerford Publix Theatres Corp. Milton Handler, Stanley D. Robinson, and Burton H. Brody, New York City, of counsel.

HERLANDS, District Judge.

This is a motion for summary judgment. The movants, Comerford Theatres, Inc. and Comerford Publix Theatres Corp., are two of fifty-eight defendants sued by plaintiff, an independent owner and operator of the Austin Theatre in the Borough of Queens, New York City, in an action for injunctive relief and damages brought under the antitrust law, 15 U.S.C.A. § 1 et seq.

Plaintiff has operated the Austin, a "neighborhood" theatre in Kew Gardens, New York, since approximately 1936. The term "neighborhood" theatre describes one which draws its clientele more or less exclusively from the immediate vicinity surrounding the theatre, as distinguished from the larger theatres in certain metropolitan areas, whose patronage comes from a relatively wide geographic area.

The fifty-eight defendants include the major motion picture producers and distributors in the United States, as well as certain exhibitors and a trade association. The complaint also lists thirty-five co-conspirators who are not named as defendants.

The complaint charges, in part, that all of the defendants were participants in a national conspiracy pursuant to which the defendants combined and conspired nationally among themselves and with subsidiary, affiliated, jointly owned and other favored exhibitors unreasonably to restrain and to monopolize distribution and exhibition of films; and that the result of this conspiracy was to effectuate a national monopoly of distribution and a nation-wide pattern of local and regional monopolies and restraints of exhibition. Plaintiff further alleges that, as a result of the conspiracy, the Austin Theatre was damaged in that two competing theatres in his immediate vicinity—both allegedly tied in with the asserted national conspiracy—received preferential treatment, in violation of the anti-trust law, in the distribution of motion pictures to be exhibited; and that such preferential treatment damaged plaintiff in his operation of the Austin Theatre.

The movants—defendants Comerford Theatres, Inc. and Comerford Publix Theatres Corp.—operate thirty-four theatres in the eastern part of Pennsylva-

nia. Movants' theatre closest to plaintiff's Austin Theatre is located in Hawley, Pennsylvania, approximately one hundred and fourteen miles from the Austin Theatre. Movants assert that they have never had any interest in or operated any theatre nearer than approximately one hundred and fourteen miles to the Austin Theatre; that the movants draw their patrons from the particular areas in Pennsylvania in which their theatres operate, whereas Austin's patrons reside in the immediate vicinity of its theatre in Kew Gardens, Borough of Queens, well over a hundred miles away; and that none of the Comerford theatres attract patrons from the Austin Theatre, and the Austin Theatre does not attract Comerford's patrons.

■ Movants' affidavits place great stress upon the fact that there is no direct competition between the Comerford theatres and the Austin Theatre, and that the absence of such competition exculpates the Comerford defendants from any possible liability. This argument overlooks the gravamen of plaintiff's complaint—that movants were participants in an alleged national conspiracy and that the overall net effect of the alleged national conspiracy was to damage plaintiff, in violation of the anti-trust law. Plaintiff's theory of liability as to movants is not one of damages resulting from direct injurious competition on the part of movants, but that plaintiff was damaged by a national conspiracy of which movants were members. The complaint and answering affidavits do not attempt to elucidate the role that was played by each of the fifty-eight defendants and thirty-five co-conspirators in the operation of the alleged conspiracy. For purposes of this motion, it is immaterial whether the Comerford defendants were principal or minor participants in the alleged conspiracy.

Some indication of the role that the Comerford defendants may possibly have played in the alleged conspiracy is contained in paragraph 16 of the complaint, which alleges:

"16. To apportion the cream of the exhibition business, the Big Five developed a system of reciprocal favors. They did not all engage in substantial theatre operations in every city. Those companies which exhibited in a given city were favored with early runs by those which did not operate there. The companies so favored in one place favored the others elsewhere. For example Warner (and to some extent Loew's) were permitted to dominate Western Pennsylvania, while RKO, Loew's and their allies monopolized Greater New York City."

Movants' affidavits deny both knowledge of and participation in the alleged national conspiracy. Paragraph 13 of the moving affidavit of Thomas F. Friday states:

"13. Neither Comerford defendant had any knowledge of the existence of any conspiracy between any of the defendants directed against the Austin Theatre in particular, or independent indoor theatre owners and operators in general, and neither Comerford defendant participated in any such alleged conspiracy."

Paragraph 4 of the moving affidavit of Frank C. Walker states:

"4. Until the institution of this action, neither I, nor anyone to my knowledge at Comerford had ever heard of the Austin Theatre. Comerford knows of no conspiracy to injure Austin, has no motive to engage in any such conspiracy, and in fact has participated in none."

■■ In ruling on a motion for summary judgment, the court's function is limited to determining whether a genuine factual issue exists; it does not extend to resolving any existing factual issues. Farrall v. District of Columbia A. A.U., 80 U.S.App.D.C. 396, 153 F.2d 647. In the present case, chief reliance is placed by movants—in negating the existence of a genuine issue as to whether movants participated in the alleged na-

tional conspiracy—upon the denials contained in the Friday and Walker moving affidavits, as quoted above. These conclusory and generalized statements are not sufficient to dispel the existence of the issue of fact as to whether movants were members of the alleged national conspiracy.

The failure of the complaint to plead specific facts connecting the Comerford defendants with the alleged national conspiracy, is not a fatal defect but may possibly warrant a motion by such defendants under Fed.Rules Civ.Proc. rule 12(e), 28 U.S.C.A., for a more definite statement.

■ Movants also emphasize the fact that plaintiff's attorney's opposing affidavits are not made upon personal knowledge. This otherwise important feature is not controlling in the present case, because it appears that plaintiff's case, in the final analysis, will depend upon evidence obtained from or through the movants and other defendants, who would have peculiar, if not exclusive, knowledge of the alleged conspiracy and its workings.

The Court of Appeals for the Second Circuit has recently rejected the type of argument now advanced by movants. Alvado v. General Motors Corporation, 2 Cir., 229 F.2d 408, 411. In that case, Circuit Judge Frank said:

"That argument disregards this important factor: The affidavit relates facts peculiarly within the knowledge of defendant's officials; indeed, it recites that Seaton is 'familiar with and has personal knowledge' of the facts. In such circumstances (especially where, as here, such a matter as good faith, or the like, is crucial), the granting of a summary judgment is error. For the opponent of the motion is thereby deprived of the opportunity to cross-examine the movant's officials, and is prevented from having a trial court assisted in its evaluation of their credibility by observing their demeanor while they testify. See,

e.g., Colby v. Klune, 2 Cir., 178 F.2d 872; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; Subin v. Goldsmith, 2 Cir., 224 F.2d 753, 767, certiorari denied [350 U.S. 883], 76 S.Ct. 136; Alabama Great Southern R. Co. v. Louisville & Nashville R. Co., 5 Cir., 224 F.2d 1, 5."

Motion for summary judgment is denied.