657 F.Supp. 405 (1987)
In the Matter of the Arbitration Between CONSOLIDATED RAIL CORPORATION, Petitioner,
and
NATIONAL RAILROAD PASSENGER CORPORATION, Respondent.
Civ. A. No. 87-0510.
United States District Court, District of Columbia.
April 6, 1987.
As Amended May 6, 1987.
Gerald P. Norton, Washington, D.C.; Laurence Z. Shiekman and Thomas E. Zemaitis, pro hac vice, Philadelphia, Pa., for petitioner Conrail.
Harold R. Henderson, Christopher M. Klein and John C. Morland, Washington, D.C., for respondent Amtrak; William R. Perlik, Deanne C. Siemer and Michael A. Mello, Washington, D.C., of counsel.

MEMORANDUM
GASCH, Senior District Judge.

I. INTRODUCTION
The issue which today confronts the Court is narrow: whether a contract between *406 two parties to arbitrate their differences requires the Court to compel arbitration where the issue to be submitted demands a ruling grounded on public policy considerations.
On January 4, 1987, a train controlled by the Consolidated Rail Corporation ("Conrail"), petitioner, failed to heed a series of slow and stop signals and consequently entered the path of a high speed passenger train operated by the National Railroad Passenger Corporation ("Amtrak"), respondent. At the track juncture near Chase, Maryland, a collision ensued, resulting in 16 deaths, several hundred injuries and millions of dollars in property damage. Since the accident, a number of lawsuits have been filed against both Conrail and Amtrak alleging negligence, gross negligence, and wanton and willful misconduct. The redress sought by these lawsuits includes punitive damages.
Conrail and Amtrak are parties to a contract which arguably bears upon liability apportionment for the aforementioned accident. In the Second Amended and Restated Northeast Corridor Freight Operating Agreement ("Freight Operating Agreement" or "Agreement") of October 1, 1986, Amtrak agreed, inter alia, to indemnify Conrail for injuries to Amtrak passengers. Section 5.6 of the Agreement states as follows:
Amtrak agrees to indemnify and save harmless Conrail and Conrail Employees, irrespective of any negligence or fault of Conrail or Conrail Employees, or howsoever the same shall occur or be caused, from any and all liability for injuries to or death of any Amtrak Passenger and for loss of, damage to, or destruction of any property of any such passenger.
On the basis of this provision, Conrail seeks indemnification from Amtrak for all the injuries arising from the accident at Chase, Maryland.
Despite the obvious breadth of the Agreement's indemnification provision, Amtrak claims that it is not obligated to defend or otherwise reimburse Conrail for any damages. Amtrak maintains that it need not indemnify Conrail because the conduct which caused the accident was reckless, wanton, willful, or grossly negligent. Amtrak contends that an indemnification agreement embracing any such conduct is unenforceable as against public policy. Similarly, Amtrak argues that there can be no indemnification for punitive damages. See National Railroad Passenger Corp. v. Consolidated Rail Corp., Civil Action No. 87-0277 (D.D.C.1987) (pending complaint for declaratory judgment).
Pursuant to the Federal Arbitration Act ("the Act"), Conrail filed this petition to compel arbitration in response to Amtrak's motion for a declaratory judgment on the indemnification issue. See 9 U.S.C. § 3. Conrail bases its petition on section 4.3 of the Freight Operating Agreement, stating that,
[e]xcept as otherwise provided in this Agreement, any claim or controversy between Amtrak and Conrail concerning the interpretation, application or implementation of this Agreement shall be submitted to binding arbitration in accordance with the provisions of the Arbitration Agreement dated April 16, 1971, among Amtrak and certain other railroads. As between the parties hereto, the term of said Arbitration Agreement shall be deemed to continue during the term hereof and this Agreement shall be deemed to be a "Basic Agreement" under section 4.5 of said Arbitration Agreement.[1]
On the basis of this broad arbitration clause, Conrail contends that the Court must submit the indemnification question to the National Arbitration Panel. For reasons hereafter provided, the Court disagrees *407 and denies Conrail's petition to compel arbitration.

II. DISCUSSION
Resolution of the present controversy requires the Court to consider the scope of the Federal Arbitration Act. See 9 U.S.C. § 2. The Act was passed in an effort to make agreements to arbitrate valid and enforceable in the federal courts. Congress noted that in the past, courts had "in the main ... denied relief to the parties seeking to compel the performance of executory agreements to settle and determine disputes by arbitration." S.Rep. No. 536, 68th Cong., 1st Sess. 2 (1924). Since the Act's promulgation, the Supreme Court has liberally endorsed agreements to arbitrate. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). This strong federal policy has given rise to a presumption in favor of arbitration. The Supreme Court has written that all doubts should be resolved in favor of the Act's coverage. See AT & T Technologies, Inc. v. Communications Workers of Am., ___ U.S. ___, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).
Notwithstanding this important federal policy, not all disputes are arbitrable. It is settled law that it is the duty of courts, not arbitrators, to decide whether a particular arbitration clause is operative. See AT & T Technologies, Inc., supra, 106 S.Ct. at 1418. Courts should depart from this rule only when the clear and unmistakable language of the arbitration clause demonstrates the intent of the parties to have an arbitrator make this initial determination. Id. In support of its petition to compel arbitration, Conrail argues that the arbitration clause at issue contains such language. See Conrail's Motion to Compel Arbitration at 14. In support, Conrail points to language in the Agreement that section 4.3 governs "any claim or controversy between Amtrak and Conrail concerning the interpretation, application or implementation of this Agreement...." Freight Operating Agreement at § 4.3. While this language is undoubtedly broad, the Court does not believe that it "clearly and unmistakably" provides that arbitrability must be decided by an arbitrator. Language sufficient to give the decision to an arbitrator must expressly state the parties' intent to take the decision away from a court; it is not enough that broad language might be read to embrace the conclusion. As no explicit language is present, the Court will resolve the threshold issue.
In evaluating the propriety of submitting a case for arbitration, the first question, always, is whether the parties have agreed to arbitrate the dispute. Where a contract contains an arbitration clause, there is a presumption that the parties intend arbitration. See AT & T Technologies, Inc., supra, 106 S.Ct. at 1419. In such cases, the Supreme Court has held that the intent to arbitrate should be found "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (citing to Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The language at issue, requiring "any claim or controversy" arising under the Freight Operating Agreement to be settled by arbitration, demonstrates a manifest intent to arbitrate. As such, the Court finds that Conrail has satisfied the first criterion for compelling arbitration.
Having determined that the parties intended to arbitrate this dispute, the Court must next ascertain "whether legal constraints external to the parties' agreement forecloses the arbitration of [their] claims." Mitsubishi Motors Corp., supra, 105 S.Ct. at 3355. Section 2 of the Federal Arbitration Act states the legal requirements for a proper arbitration clause. The Act recites, in relevant part,
[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*408 9 U.S.C. § 2 (emphasis added). It is undisputed that the Freight Operating Agreement involves commerce and therefore is subject to section 2. It is less clear whether any grounds exist in law or in equity to find the Agreement's arbitration clause unenforceable.
The exception set out in section 2 of the Act is traceable to Congress' concern that an "arbitration agreement [should be] placed upon the same footing as other contracts." H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924); cf. AT & T Technologies, Inc., supra, 106 S.Ct. at 1418. Toward this end, Congress drafted section 2 to reflect that arbitration agreements, like other contracts, are subject to revocation on the basis of deficiencies that typically void contracts. The Supreme Court acknowledged in Mitsubishi Motors Corp., supra, 105 S.Ct. at 3354, that "fraud or overwhelming economic power would provide grounds for [] revocation [of an arbitration agreement]." Other courts have likewise held that lack of consideration, lack of capacity, lack of authority to contract, frustration, or other illegality will also invalidate an agreement to arbitrate. See, e.g., American Airlines, Inc. v. Louisville and Jefferson County Air Board, 269 F.2d 811, 816 (6th Cir.1959); Eastern Marine Corp. v. Fukaya Trading Co., S.A., 364 F.2d 80 (5th Cir), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966).
The Court is of the opinion that Conrail's petition to compel arbitration must similarly fail because the arbitration clause in the Freight Operating Agreement may be unenforceable in the present case. Whether the Court or an arbitration panel decides the merits of the instant controversy, the issues will be the same: must Amtrak indemnify Conrail for any damages arising out of the Chase, Maryland disaster founded upon reckless, wanton, willful, or grossly negligent acts by Conrail or resulting in a punitive damages award. These are neither strictly factual nor legal issues; they are largely questions of public policy. See, e.g., Alabama Great Southern R.R. v. Louisville & Nashville R.R., 224 F.2d 1, 4 (5th Cir.1955). The Supreme Court has expressly held that public policy is not a proper subject for arbitrators; rather, "the question of public policy is ultimately one for resolution by the courts." W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); see also 16 Williston on Contracts § 1922C at 517-18 (3d ed. 1976) ("[t]here are certain issues which the arbitrator will not be allowed to decide ... because of the presence of some element of public policy"). Because the Court finds that the merits of this case are inextricably linked to public policy determinations and arbitration is an improper mechanism for such a decision, the Court denies the motion of Conrail to compel arbitration.
In so holding, the Court slightly expands the exception to arbitration embodied in section 2 of the Federal Arbitration Act. Nevertheless, this holding is consonant with prior decisional law. While no other Court seems to have confronted this particular situation, there are undoubtedly "grounds [that] exist at law" to hold a contract provision illegal and unenforceable on the basis of public policy. See, e.g., Great Southern R.R., supra, 224 F.2d at 4; see also Simpson Contracts § 214 (1954).[2]
At least one additional factor argues in favor of denying Conrail's petition to compel arbitration. In enacting the Federal Arbitration Act, Congress noted its concern for expediting the resolution of disputes:
[i]t is practically appropriate that the action should be taken at this time when *409 there is so much agitation against the costliness and delays of litigation.
H.R.Rep. No. 96, 68th Cong., 1st Sess. 2 (1924). Although the Supreme Court has construed this concern as secondary to Congress' principal goal of making arbitration agreements enforceable in federal court, see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20, 105 S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985), this lesser purpose ought not to be ignored.
The Court has ruled that public policy must be considered to properly evaluate the vitality of the indemnification agreement which allegedly binds the parties in this case. Whether an arbitration panel refuses to consider public policy or erroneously decides the issue, this Court will inevitably be requested to review the decision. See W.R. Grace & Co., supra, 461 U.S. at 766, 103 S.Ct. at 2183. Both the petitioner and the respondent have represented that they will not settle cases with passenger victims of the Chase, Maryland disaster until liability apportionment is clear. Given the public interest in expeditiously compensating those aggrieved parties and of lessening the burden of the federal judiciary, the Court is reluctant to submit to arbitration a case which cannot be finally decided by arbitrators. Referral would beget only delay and, accordingly, the Court refuses to require arbitration.

ORDER
Upon consideration of the petition of Consolidated Rail Corporation ("Conrail") to compel arbitration, the opposition of National Railroad Passenger Corporation ("Amtrak") thereto, oral argument, and the entire record herein, it is by the Court this 6th day of April, 1987,
ORDERED that Conrail's petition be, and hereby is, denied; and it is further
ORDERED that Amtrak shall brief its motion for summary judgment on the question of whether public policy invalidates the indemnification clause in the Freight Operating Agreement by April 20th, 1987, and it is further
ORDERED that Conrail's opposition shall be submitted in accordance with the timetable set forth in Local Rule 108.
NOTES
[1] Section 4.7 of the Arbitration Agreement provides, in relevant part,

[a]ny claim or controversy covering the interpretation, application or implementation of this Agreement shall be submitted to the National Arbitration Panel for arbitration in accordance with the provisions hereof as interpreted and applied by the National Arbitration Panel.
See The National Railroad Passenger Corporation Arbitration Agreement, dated April 16, 1971, at § 4.7.
[2] The Supreme Court has recently admonished lower courts not to rule on the potential merits of arbitrable claims in determining whether to submit the claims to arbitration. See AT & T Technologies, Inc., supra, 106 S.Ct. at 1419. As such the Court recognizes that the indemnification provision in the Freight Operating Agreement may be invalid on public policy grounds and is therefore not properly referable to arbitration. However, in reaching this conclusion, the Court expresses no opinion as to the ultimate enforceability of the indemnification clause.