418 P.2d 390

James B. REIDY, as Executor of the Estate of Ida A. Shepard, deceased, and Pima Savings and Loan Association, an Arizona corporation, Appellants,

v.

Clara ALMICH, Appellee.*

2 CA–CIV 262.

Court of Appeals of Arizona.

Div. 2.

Sept. 27, 1966.

Rees, Estes & Browning, by Paul G. Rees, Jr., and Daniel J. Reidy, Tucson, for appellant Reidy.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8540. The matter was referred to this court pursuant to A.R.S. section 12–120.-23.

Merchant, Lohse, Donohue & Bloom, by Ashby I. Lohse, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a summary judgment granted in favor of one of the defendants in an interpleader action brought by the plaintiff, Pima Savings and Loan Association, to determine the ownership of a savings account held in that institution under the name of "Shepard, Ida A., Trustee." The plaintiff joined as defendants the executor of the estate of Ida A. Shepard and Clara Almich, a surviving sister of the deceased, who was named as beneficiary in the signature card pertaining to the subject account. The judgment of the court below was in favor of the defendant Clara Almich and against the contention of the executor that the amount on deposit in the subject account at the time of the death of Ida Shepard was the property of her estate.

The subject account had been established originally on January 4, 1957, as the joint account of William L. or Ida A. Shepard, husband and wife. The husband, William L. Shepard, died sometime in 1957 and the account in question was continued thereafter as the individual account of Ida A. Shepard until August 25, 1960. At this time Mrs. Shepard came into the office of the plaintiff and signed a signature card reading as follows:

"Individual Trust                    Account No. 2020

(1) Shepard,          Ida A.          _____Trustee
    (To be typed) (Surname)   (First Name)   (Middle Name)

(2)   Almich, Mrs. Clara                        Beneficiary

I hereby apply for membership and a _____ savings share account in the          PIMA SAVINGS AND LOAN ASSOCIATION and for the issuance of evidence of membership. A specimen of my signature is shown below and the association is hereby authorized to act without further inquiry in accordance with writings bearing such signature.

Signature /s/ Ida A. Shepard                        as Trustee
                        Telephone Number

Address    1137 E. Drachman

As Trustee for    Clara Almich                        Beneficiary

As specified in trust agreement on reverse side hereof. Dated 25 day of
    Aug          , 19 60 ."

On the reverse side of the signature card was a form of "Trust Agreement," which contained five numbered paragraphs. In paragraphs (1) and (2) the power to control the account and to revoke it at any time is retained in the "trustee." There are no blanks in these paragraphs. Paragraphs (3) and (4) provide for the appointment of a "successor trustee" and for a continuation of the trust, "* * * subject to the right of revocation * * *" until the "beneficiary" reaches a certain age. These two paragraphs have unfilled blanks pertaining to the names of the successor trustees and the age of the beneficiary. Paragraph (5), absolving the savings and loan association from liability in honoring the signature of the "trustee," has no unfilled blanks. A space for a date and the signature of the "grantor" were left in blank at the bottom of the form.

The employee of the plaintiff loan association who dealt with Mrs. Shepard on the occasion in question could not remember

the particular circumstances of the transaction of August 25, 1960, but testified that the transaction appeared from the records of the plaintiff to have been handled in its customary way to change an individual account into a trust account with a designated beneficiary. This employee testified that it was not customary at the time of this transaction for the reverse side of the signature card on an "individual trustee" account to be completed as it was not thought by her superiors to be necessary to establish such an account.

The defendant-executor has made admissions in response to requests for same that the signature of Ida A. Shepard upon the signature card in question is genuine and that the information upon the card was personally supplied to the plaintiff by Ida A. Shepard.

At the time of the death of Mrs. Shepard, there was the sum of $10,000, plus accumulated interest, in the account in question. There is a verified statement from another surviving sister of Ida A. Shepard on file in this action reading, in part, as follows:

> "I Marion Knoll the undersigned, know there was ten thousand dollars put away for Clara Almich in a Saving and Loan Assn in Tucson Arizona, by Ida Shepard, because Ida told me while living at my home 2711 West 28 Street Minneapolis, Minn."

Other than the foregoing, there was no evidence before the lower court as to any intent or lack of intent on the part of Ida A. Shepard to establish a trust for the benefit of her surviving sister Clara Almich. The plaintiff made no objection to the motion for summary judgment of the defendant Almich and has taken no appeal from the judgment below.

The defendant-executor filed objections to the motion, unsupported by affidavit, and has appealed to this court from the unfavorable judgment below, contending (1) that the signature card in question is not sufficient to satisfy the requirement of A.R.S. section 6-431 that there be a "written agreement" and (2) that there was insufficient

evidence of the intent of the deceased, Ida A. Shepard, to establish a trust as to the subject savings account.

The original complaint was filed on July 9, 1962, while summary judgment was granted almost two years later, on May 25, 1964. There is no contention made by the appellant-executor that the trial court wrongfully restricted the appellant in pursuing discovery procedures. There is no suggestion on appeal that any additional evidence would be forthcoming at a trial other than that which might be developed by cross-examination of whatever witnesses might be called by the defendant Almich. The only known witness to the transaction changing the savings account from an individual one to that of an "individual trust" account is the employee of the plaintiff who was examined by appellant's counsel at the time her deposition was taken. The only evidence in the record pointed out by the appellant as casting any doubt upon the intent of the deceased to establish an account which would become the property of the defendant Clara Almich upon the death of the deceased is a portion of the verified statement of Marion Knoll to the effect:

> "She [Ida Shepard] told me that Bill Shepard her late husband had made a will dividing their estate equally to his Brother Fred Shepard and her sister Clara Almich, but that she was going to make a new will giving it to the children, and Clara Almich."

A.R.S. section 6-431, subsec. B, in its pertinent portion, reads as follows:

> "B. If one or more persons opening or holding an account shall execute a *written agreement* with the association providing that the account shall be held in the name of such person or persons as trustees for one or more persons designated as beneficiaries, the account and any balance thereof which exists from time to time shall be held as a trust account and *unless otherwise agreed* between the trustees and the association:

> "1. Any such trustee during his lifetime may change any of the designated

beneficiaries by a written direction accepted by the association.

"2. Any such trustee may withdraw or receive payment in cash or check payable to his personal order and any payment or withdrawal shall constitute a revocation of the agreement as to the amount withdrawn. .

"3. Upon the death of the last surviving trustee the person or persons designated as beneficiaries who are living at the death of the last surviving trustee shall be the holders of the account (as joint owners with the right of survivorship if more than one) and any payment to the holder or any of such holders shall be a complete discharge of the association's obligation as to the amount so paid." (Emphasis added)

We are here dealing with a "Totten" or "tentative" trust, a device used to pass property in a bank account after the depositor's death to a designated person through the vehicle of a trust rather than through the more ritualistic process of probate. Without the aid of statute, the device has been both upheld, In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711 (1904), and struck down, Murray v. O'Hara, 291 Mass. 75, 195 N.E. 909 (1935). The Restatement of the Law of Trusts (Second), section 58, has resolved this conflict of authority in favor of upholding such a trust:

"Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust." Restatement (Second), Trusts, § 58

This court has no need to determine what the common law of Arizona might be on this interesting subject, the legislature having specifically given its approval to the concept of the tentative trust insofar as the savings account in question is concerned by the adoption of A.R.S. section 6-431(B).

If the card in question was signed by the deceased with the intent of creating a tentative trust according to the language contained on the signature card, it seems clear that the statute in question has been satisfied. No particular form for the "written agreement" authorized by the subject statute is specified and we hold that any written agreement that states the particular savings account to be so controlled, designates the beneficiary and specifies that the depositor is a trustee for the beneficiary named, is sufficient to satisfy the statute. The statute is patently intended ( " * * * unless otherwise agreed . * * * " ) to avoid the necessity of verbalizing the particulars of the trust agreement. ...

However, in this case, the signature card specifically adopted by reference the trust agreement on the reverse side thereof. Such an adoption by reference may be valid. 17A C.J.S. Contracts, § 299, p. 136; 17 Am.Jur.2d, Contracts, § 263, p. 666. The leaving of blanks in various paragraphs of the agreement so adopted does not necessarily invalidate such adoption. 17 C.J.S. Contracts, § 65, pp. 742–743; 17 Am.Jur.2d, Contracts, § 280, pp. 693–694. Whether the writing on the reverse side of this signature card, or any portion thereof, is a part of this trust agreement we need not decide, because in either event the judgment below was correct insofar as the appellant is concerned, provided the signature card was signed by the deceased with the intent to make it effective.

It is the appellant's contention that the signature upon the card in question was merely a specimen signature, and that there is no showing that the deceased intended that her act of signing would make the trust account effective. A signature may be effective as such, no matter where placed upon an instrument, providing that it was the intent of the signator that such be the

case. 80 C.J.S. Signatures § 2b, p. 1287; 17 Am.Jur.2d, Contracts, § 72, pp. 410–411.

The appellant contends that when a fact at issue involves a state of mind, the matter may not be disposed of upon a motion for summary judgment, relying upon Subin v. Goldsmith, 224 F.2d 753 (2d Cir.1955); Alabama Great Southern R. Co. v. Louisville and Nashville R. Co., 224 F.2d 1, 50 A.L.R. 2d 1302 (5th Cir.1955); and Arnstein v. Porter, 154 F.2d 464 (2d Cir.1946).

■ While we agree that the summary judgment procedure should be sparingly used when a vital issue concerns a state of mind, we do not believe that the granting of a summary judgment is never authorized when state of mind is an issue.

The line of federal cases cited by the appellant is distinguishable. In each of the cases cited, to the extent that the case was concerned with the factual issue of a state of mind, the state of mind at issue pertained to a party to the suit. In each, there was some semblance of circumstantial evidence that this party's claim or disclaimer of the state of mind in question was untrue. The reasoning of these cases is that under these circumstances the matter should not go off on summary judgment, but a jury, or the trier of fact, should be given the opportunity to judge the credibility of the testimony of such a party by direct confrontation at the time of trial.

We note that our own Supreme Court has cited, in Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962), the case of Alvado v. General Motors Corporation, 229 F.2d 408 (2d Cir. 1955), cert. denied, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497 (1956). The case so cited follows the general line of federal authority analyzed above. In *Alvado,* the critical question was whether the defendant-employer had adopted a particular labor contract with the intent to discriminate against veterans. In *Alvado,* the court said in part:

"That argument disregards this important factor: *The affidavit relates facts peculiarly within the knowledge of defend-* *ant's officials*; * * *. In such circumstances (especially where, as here, such a matter as good faith, or the like, is crucial), the granting of a summary judgment is error." (Emphasis added) 229 F.2d at 411–412

The *Peterson* decision itself does not indicate that summary judgment is never proper when a state of mind is an issue. The court said:

"A careful review of the depositions on file indicate that there is a dispute as to whether the plaintiff acted in good faith in the sale of the pledged property." 90 Ariz. at 363, 368 P.2d at 318.

If the court had intended to hold that summary judgment is never to be granted when a state of mind is involved, this would have been the time to say it.

In the instant action, the state of mind involved is not that of a party. The state of mind at issue concerns the intent of Ida A. Shepard at the time she signed the signature card in question on August 25, 1960. The defendant Almich was not present on this critical occasion.

■ As far as the plaintiff savings and loan association was concerned, this was a routine transaction. It is not surprising that the teller who handled the transaction cannot remember specifically the occasion in question. However, this employee testified that the transaction was handled in the usual course of business of the savings and loan association and that the procedure as then established for changing an individual savings account into an "individual trust" account was followed. There are no circumstances pointed to by the appellant as casting any doubt upon the credibility of this witness. This employee testified that this was the type of signature card that would be used if a customer came into the bank and informed the teller: "I want to be able to use this account until I die and then I want it to go to somebody else."

We are unable to agree that the sentence quoted herein from the verified statement of the deceased's sister, Marion Knoll, pertaining to a new will by Mrs. Shepard, is in

some way contradictory of this witness's statement that $10,000 had been " * * * put away * * *" for the defendant Almich by the deceased.

When the facts pertaining to a state of mind are as clear as in this case, we hold that the trial court is justified in granting summary judgment. Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.