422 P.2d 727

**The STATE of Arizona, Appellant,**

v.

**The ASHTON COMPANY, Inc., Contractors and Engineers, Appellee.**

**2 CA–CIV 152.**

Court of Appeals of Arizona.

Jan. 27, 1967.

Rehearing Denied March 9, 1967.

Darrell F. Smith, Atty. Gen., Harry Schoolitz, Asst. Atty. Gen., Phoenix, for appellant.

Hall, Jones, Hannah, Trachta & Birdsall, by Ben C. Birdsall, Tucson, for appellee.

HATHAWAY, Chief Judge.

This is an appeal by the State of Arizona (defendant below) from a judgment entered against it in favor of the Ashton Company, Inc. (plaintiff below) in the amount of $57,140.40, together with interest thereon, upon the granting of plaintiff's motion for summary judgment.

The litigation arose out of a contract entered into by the plaintiff and defendant concerning the construction of a highway in Tucson, Arizona. The plans for the construction project, which were incorporated by reference into the contract, detailed in cubic yards the quantities of borrow material which would be needed to construct the highway, i. e., approximately 463,968 cubic yards. The State, however, required that bids be submitted on a price-per-ton basis.

The materials division of the State Highway Department furnished prospective bidders with information concerning sources of materials and pertinent test analyses. These "information sheets" specifically advised that they were made available for information purposes only and were not to be considered a part of the contract papers, and, further, that the State declined to accept responsibility for "any conditions encountered which may be at variance from information contained herein."

The standard specifications for road and bridge construction, which were part of the subject contract, contained a section dealing with material pits which likewise referred to the materials division information:

"* * * This information will be furnished the contractor as an attachment to the plans and *is solely for informational purposes*. This information is not to be construed as a guaranty of the area of the pit, nor of the quantity or depth of acceptable material." (Emphasis supplied)

The contract bidding schedule which set forth the approximate quantities of various items of the construction project indicated that, as to borrow, an approximate quantity of 783,000 tons would be required as to which a unit bid price in dollars and cents and a total bid in dollars and cents was to be submitted.

According to an affidavit supporting the plaintiff's motion for summary judgment, the bid of forty cents per ton of borrow submitted by the plaintiff and accepted by the State was arrived at by figuring the costs involved in the excavation, hauling, placement and compaction of the cubic yard quantity of borrow as shown in the plans furnished by the State plus a reasonable profit thereon and converting the cubic yard cost plus profit to a per ton basis as required by the bidding schedule. The plaintiff believed that the quantity of cubic yards required by the plans would weigh approximately 783,000 tons as set forth in the bidding schedule and, in reliance upon this information as to tonnage, submitted the forty cents per ton bid.

The affidavit further stated that the only method by which the borrow item could be bid was by using the cubic yard quantity shown by the plans and then converting this to a per ton unit figure based upon the weight given for the total cubic yards required.

The complaint filed by the plaintiff set forth several claims for relief. One claim asserted that the written agreement of the parties did not reflect their actual agreement and reformation of the contract in conformity therewith was sought. The motion for summary judgment was presented on the basis that plaintiff was entitled, as a matter of law, to summary judgment granting reformation of the contract and for judgment upon the contract as reformed.

The 783,000 tons estimated by the State as the approximate quantity of borrow required was calculated on the basis of a 125 pounds per cubic foot density of the material to be removed from the borrow pit. This density figure was the result of one test analysis procured by the State on material extracted from the pit at a particular level. The plaintiff performed no tests prior to submission of its bid as it was not the custom or practice of bidders to so do. The average density of the materials removed from the designated pits and hauled by the plaintiff in performance of the subject contract was 105 pounds per cubic foot.

The contract between the parties in substance provided that the plaintiff would furnish the specified number of cubic yards of compacted borrow material at a price of forty cents per ton. The plaintiff's position in the superior court, which prevailed on the motion for summary judgment, was that the actual agreement required that the plaintiff would furnish 463,968.64 cubic yards at the unit price of 67½ cents per cubic yard, or a total consideration of $313,200, and it was to be paid the sum of $319,615.20 (the unit price per cubic yard multiplied by the actual cubic yards furnished), leaving a balance

due to plaintiff in the sum of $57,140.40. The $313,200 figure was computed by the plaintiff by multiplying forty cents per ton by the number of tons specified in the bidding schedule as the approximate quantity of borrow, i. e., 783,000 tons. The plaintiff's computation of the balance due was as follows:

1. The bidding proposal shows forty cents per ton on an estimated tonnage of 783,000, or a total of $313,200.
2. Therefore, plaintiff's bid was $313,200 for 463,968 compacted cubic yards.
3. $313,200 divided by 463,968 cubic yards equals 67½ cents per cubic yard.
4. 473,504 cubic yards actually furnished multiplied by 67½ cents equals $319,615.20.
5. $319,615.20, less the amount paid by the State, leaves a balance of $57,140.40.

As we have previously indicated, the superior court awarded judgment to the plaintiff in this amount, i. e., $57,140.40, together with interest thereon, thereby determining there was no genuine issue as to any material fact and that plaintiff was entitled to reformation as a matter of law.

This case has been thoroughly and extensively briefed by counsel for the respective parties. The sole issue on review, however, is whether disposition of the case on a motion for summary judgment was proper under Rule 56(c), as amended, Arizona Rules of Civil Procedure, 16 A.R.S. In determining whether there was error in the granting of plaintiff's motion for summary judgment, the record must be construed most strongly in defendant's favor. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962); Ray Scottsdale Lumber Co. v. First Federal Savings and Loan Association, 3 Ariz.App. 366, 414 P.2d 754 (1966); State v. Standard Oil Company of California, 3 Ariz.App. 389, 414 P.2d 992 (1966).

The Supreme Court of Arizona has suggested that trial judges should exercise great care in granting motions for summary judgment, notwithstanding the desirability of prompt dispatch of judicial business. Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963). See also Doehler Metal Furniture Co. v. United States, 149 F.2d 130 (2d Cir., 1945); Rolle Mfg. Co. v. Marco Chemicals, Inc., 92 F.Supp. 218 (1950); Richard Colgin Co. v. Diamond Crystal Salt Co., D.C., 32 F.R.D. 44 (1963); S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235 (6th Cir., 1963).

█ The defendant assails the granting of the motion for summary judgment on the ground that there existed genuine issues of material fact, while the plaintiff contends there was no dispute as to the facts and it was entitled to judgment as a matter of law. However, even if there is no factual dispute, where the possible inferences to be drawn from all the circumstances are conflicting, a summary disposition is unwarranted and the choice is for the jury. Osborn v. Boeing Airplane Company, 309 F.2d 99 (9th Cir., 1962); Reliable Volkswagen Co. v. World-Wide Auto. Corp., D.C., 34 F.R.D. 134 (1963).

The plaintiff's claim for reformation was based on the alleged fact that the contract did not express the real agreement of the parties with reference to the unit price per ton of borrow which constituted a mutual mistake requiring reformation of the contract. The defendant, on the other hand, urged that the written contract expressed the parties' agreement and denied "that a mistake on the part of plaintiff results in a condition requiring reformation * * *."

█ Mistake, as the word is used in connection with reformation, is a state of mind not in accord with the facts. 76 C.J.S. Reformation of Instruments § 25a.

To entitle one to reformation, it is essential to show that a definite *intention* on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution. Greenfield v. Aetna Casualty & Surety Co., 75 Ohio App. 122, 61 N.E.2d 226 (1944). If the minds of the parties had not met in a prior agreement, there is nothing to be corrected. 76 C.J.S. Reformation of Instruments § 18.

█ We have recently recognized that summary judgment procedure may be utilized notwithstanding state of mind is an issue.[1] In the instant case, however, where the intent of the parties had to be ascertained in order to determine their respective rights and obligations, summary judgment is inappropriate. S. J. Groves & Sons Company v. Ohio Turnpike Commission, supra; Baxter v. Lancer Industries, Inc., D.C., 213 F.Supp. 92 (1963).

█ Proof of mutual mistake involves, to a great extent, evidence of subjective facts. As the court stated in Alabama Great Southern Railroad Co. v. Louisville & Nashville Railroad Co., 224 F.2d 1, 50 A.L.R.2d 1302 (5th Cir., 1955):

"* * * where * * * intent, * * consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, * * * the issues may not be disposed of on summary judgment." 244 F.2d at 5.

Since intention can generally be established only by circumstantial evidence, the ultimate findings of fact as to mutual mistake must be based primarily upon inferences to be drawn from testimony whose probative value should be determined upon a courtroom trial and not mere affidavits and depositions. Where, as here, the parties contracted for a quantity of material at a fixed unit price, and such agreement was embodied in a written instrument, a judge may not, on a motion for summary

[1]. Reidy v. Almich, 4 Ariz.App. 144, 418 P.2d 390 (1966); Klahr v. Winterble, 4 Ariz.App. 158, 418 P.2d 404 (1966).

judgment, draw fact inferences. Such inferences may be drawn only by the jury in the instant action. Bragen v. Hudson County News Company, 278 F.2d 615 (3d Cir., 1960); Cross v. United States, 336 F.2d 431 (2d Cir., 1964).

For the foregoing reasons, the judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

KRUCKER, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.