441 P.2d 579

**John Lloyd GAETHJE, Appellant,**

v.

**Edith N. GAETHJE, a widow, and Edith N. Gaethje as Executrix of the Estate of Edward H. Gaethje, Deceased, Appellee.**

**No. 2 CA–CIV 479.**

Court of Appeals of Arizona.

June 5, 1968.

Rehearing Denied June 26, 1968.

Review Denied Sept. 17, 1968.

---

Gentry, McNulty, Toci & Borowiec, by
Matthew W. Borowiec, Bisbee, for appellant.

Riley & Slaughter, by Richard J. Riley,
Bisbee, for appellee.

MOLLOY, Judge.

This case involves a dispute between a
widow and the son of her deceased husband
by a previous marriage over the proceeds

**546**

of a life insurance policy on the husband's life.

Edith N. Gaethje, is the widow of Edward H. Gaethje ("decedent") and executrix of the latter's estate. She commenced this action against the defendant and appellant, John Lloyd Gaethje, a son of the decedent by a previous marriage and the named beneficiary of the insurance policy here in question at the time of decedent's death, and she prevailed below on summary judgment.

Plaintiff and decedent married for the first time on March 23, 1947. On December 31, 1947, by reason of his employment with Phelps Dodge Company, a certificate of coverage under the latter's group life insurance policy was issued to decedent. At the time of issuance, decedent designated plaintiff, his wife, beneficiary under the policy. She remained the designated beneficiary until January 31, 1952, when the decedent made his son the beneficiary under the policy.

Shortly thereafter, on July 24, 1952, plaintiff instituted divorce proceedings against decedent. A decree of divorce was granted to plaintiff by default on August 14, 1952. The decree contained no reference to this policy.

Plaintiff and decedent were married for the second time on May 11, 1953. Shortly thereafter, decedent executed another designation naming his son as beneficiary. Decedent and plaintiff remained married and decedent remained an employee of Phelps Dodge Company until his death on May 30, 1966.

All premiums paid on the subject policy, totaling $905.94, were paid from payroll deductions taken from the wages of the decedent. It was stipulated by the parties that the policy was of the term variety and did not at any time have any cash surrender value.

There are other factual matters that are not clear on the record before us. It is alleged in the complaint and asserted in an affidavit of the plaintiff that she had no knowledge of and never consented to decedent's change of beneficiary from herself to defendant. Defendant executed a verified general denial of plaintiff's allegation, but filed no counter-affidavit. Additionally, it is asserted in behalf of defendant that plaintiff "received more than her share of the community property" and has received or will receive more property by virtue of joint ownership and by virtue of her status as sole beneficiary of decedent's estate, now in probate. While the abstract of record before the court discloses the existence of various property of the husband which has become or will become the property of plaintiff by reason of his death, the value of such is not shown.

Both parties moved for summary judgment. The trial court held that decedent's change of beneficiary to defendant amounted to an invalid transfer of community property beyond the scope of the husband's authority in the absence of his wife's consent. The trial court further found the "uncontroverted" affidavit of plaintiff conclusive as to lack of consent on her part, and rendered summary judgment for plaintiff in her capacity as executrix of decedent's estate for $5,803.80, representing 96.73 per cent of the total proceeds or all of the proceeds less only those which were calculated to be attributable to premiums paid while plaintiff and decedent were divorced. The son brings this appeal.

In reaching its decision, the trial court relied particularly upon the case of Occidental Life Ins. Co. v. Powers, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937), and later Washington authorities, including Wilson v. Wilson, 35 Wash.2d 364, 212 P.2d 1022 (1949); and California-Western States Life Ins. Co. v. Jarman, 29 Wash.2d 98, 185 P.2d 494 (1947). Under those and similar cases, a designation by the husband of a person other than his wife as beneficiary of a life insurance policy upon his life, without the consent of the wife, is "void" as a "fraud" upon the wife's rights, and she may insist that the entire proceeds be placed in the husband's estate as community property. The only exceptions are

cases in which the amount involved would fall within the rule of *de minimis*. Hanley v. Most, 9 Wash.2d 429, 115 P.2d 933 (1941).

Other community property states have taken positions differing from that of the Washington court. See Vol. 1 de Funiak, Principles of Community Property § 123, at 353–57. See also Huie, Community Property Laws as Applied to Life Insurance, 18 Tex.L.Rev., at 121 et seq.

In California, the attempted change of beneficiary is voidable, rather than void, and if the wife brings an action to recover the proceeds, her recovery is limited to one half of such proceeds. Blethen v. Pacific Mut. Life Ins. Co., 198 Cal. 91, 243 P. 431 (1926). The remaining half goes to the designated beneficiary under California law, the theory being that the designation is testamentary in character and the California probate code gives the husband testamentary disposition over one half of the community property. Tyre v. Aetna Life Ins. Co., 54 Cal.2d 399, 6 Cal.Rptr. 13, 353 P.2d 725 (1960).

There is a third view, which prevails in Texas. It is well stated in de Funiak, § 123, at 354:

> "But in the states, such as Texas, which recognize the right of the husband to make moderate gifts or donations from the community property, not excessive and not in fraud or injury of the wife's rights, it appears that a husband may, during marriage, insure his life in favor of his parents or of children by a former marriage, and pay the premiums with community funds, and that so long as he is fulfilling a duty, even though it be only a moral one, to provide for such relatives, and so long as the community funds so expended are not unreasonably out of proportion to the other community assets remaining, there is no fraud upon the wife and she cannot recover any of the premiums so paid or any of the proceeds of such policies for the benefit of the community."

We think that our own Supreme Court's decision in the case of Gristy v. Hudgens, 23 Ariz. 339, 203 P. 569 (1922), gives to Arizona its own rule, differing from the approach of each of its three sister states.

In Gristy v. Hudgens, the insured under an employees' benefit association plan had designated a minor child, unrelated to him, as beneficiary of his interest upon his death. The widow of the insured claimed the proceeds notwithstanding the designation. In holding for the minor child, the named beneficiary, the court first noted that the record did not disclose that the policy had been purchased with premiums paid for out of community funds, and stated that no assumption would be made to the effect that it was so purchased. The court's disposition of the issue on those grounds alone would be questionable under the doctrine which presumes payment from community funds. Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786 (1945); Rundle v. Winters, 38 Ariz. 239, 298 P. 929 (1931); Malich v. Malich, 23 Ariz. 423, 204 P. 1020 (1922); and La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426 (1914).

The court, in Gristy v. Hudgens, went on to state, however, at 23 Ariz. 348, 203 P. 572:

> "Even if this court should assume that to be true [that community funds were used to pay premiums], there is no showing or statement that such funds were paid in fraud of the wife's rights, *and no showing that the wife had not received even more than her share of the community property.* Furthermore, it is elementary that the husband has a right to dispose of the personalty belonging to the community as he sees fit, provided that he does not, by his disposal of the same, thereby defraud his wife."

(Emphasis ours)

Another portion of the prevailing opinion in Gristy v. Hudgens was disapproved in Day v. Clark, 36 Ariz. 353, 285 P. 682 (1930), but the quoted passage has not

been demeaned as authority. It is clearly in point in the case at bar and we do not feel at liberty to disregard it.

■ Our conclusion concerning Arizona law in this specific area of insurance law touching community property rights is strengthened by our Supreme Court's holding in Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956), that, while the community property decisions of the State of Washington are informative, they are not necessarily more persuasive than those of California or Texas in determining the community property law of this state.

Of the three views, Washington, California and Texas, *Gristy* appears the most compatible with the law of Texas. In Texas, the husband as head of the community has the right to make limited gifts of the community property, so long as they are not "excessive or capricious gifts," 1 Speer, Law of Marital Rights in Texas, § 186, at 303 (1961); Aaron v. Aaron, 173 S.W.2d 310 (Tex.Civ.App.1943, error ref. w. m.); Locke v. Locke, 143 S.W.2d 637 (Tex.Civ.App.1940); Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237 (1910). Using this as a standard, Texas permits the husband to designate a beneficiary other than his wife of a life policy in which he is the insured when the gift of community property which results from such designation is not "excessive, fraudulent or capricious." Brown v. Brown, 282 S.W.2d 90, 92 (Tex.Civ.App.1955). Conversely, when the designation of a beneficiary to a life policy results in a "capricious and excessive gift of community property," there is a "constructive fraud" of the wife's rights, regardless of the subjective intent of the husband. Davis v. Prudential Ins. Co. of America, 331 F.2d 346, 352 (5th Cir. 1964).

In a leading case, the Texas Supreme Court stated:

"The complexities attendant upon dealing with life insurance proceeds and in the attempt to make them conform to our community property law are quite apparent. The decisions among the community property jurisdictions are not altogether in harmony nor even in our own state for that matter. It seems preferable, however, to distribute the funds in compliance with the terms of the insurance contract, absent fraud, than compound the difficulties by drawing fine distinctions."

Warthan v. Haynes, 155 Tex. 413, 288 S.W.2d 481, at 484 (1956).

Though *Gristy* points us in the direction of Texas law, there is no carte blanche adoption of principles. Our law in regard to gifts made by either spouse during the existence of the marriage may be different than that of Texas, see Spector v. Spector, 94 Ariz. 175, 183, 382 P.2d 659, 664 (1963), and see Thurman, Federal Estate and Gift Taxation of Community Property, 1 Ariz. L.Rev. 253, at 257–59 (1959). The Texas test of voidability appears to invite litigation by the indefiniteness of its expression.[1]

---

1. A well-known community law publicist in Texas has noted the inherent ambiguity in this language:

"If it be true that a showing of an 'intent to defraud' is necessary in order for the wife to invalidate the husband's gift, what does the phrase mean? It has been used to describe the husband's state of mind when he made a sham transfer for the purpose of hiding community property from his wife in order to enjoy it himself after the dissolution of the marriage. Does it apply only to those situations where he attempts to enrich himself at her expense? If so, a husband, conscious of his approaching death, could make an *inter vivos* gift of the entire community estate to a third person and leave his wife penniless, provided he intended that the donee should enjoy the property in his own right. The limitation of the husband's power of testamentary disposition to his one-half of the community could easily be evaded if so broad a power of disposition *inter vivos* were tolerated. Does an intent to defraud exist, then, in every case where the husband intends to deprive the wife of her interest in the thing donated? If so, the husband could make no gifts at all, for if he intends that the donee shall have the property, he necessarily intends that his wife shall be deprived of her interest in

We see substantial reason for regarding gifts to take effect on death in a different light than those during the existence of the community. After the death of either spouse, there is no longer a community to protect. Both husband and wife have the right to leave by testamentary disposition one half of the community property however he or she may choose. A.R.S. § 14–203.[2] Joint tenancy is a commonly used device for passing title to survivors as are trust instruments. Life insurance is a method of converting present assets into property to be distributed in accordance with the insured's directions at death. We fail to see why any one of these methods is inherently more fraudulent than any other or why any such transfers should be ignored in determining whether the deceased spouse "defrauded" the surviving spouse by the designation of a beneficiary on a life insurance policy.

The relationship between testamentary disposition and the designation of a beneficiary in a life insurance policy is a close one. In 29A Am.Jur. Insurance § 1631, at 715, it is stated:

"* * * with reference to the beneficiary it has frequently been said that a policy of life insurance is in the nature of a testament, and although not a testament, in construing it the courts will, so far as possible, treat it as a will and determine the effect of a clause designating the beneficiary by rules under which wills are interpreted."

As we have previously noted, the California view that the surviving spouse may attack the designation of beneficiary only to the extent of one half of the proceeds is rationalized on the basis of the "testamentary power" of the spouse to dispose of his or her one-half interest. Benson v. City of Los Angeles, 60 Cal.2d 355, 33 Cal.Rptr. 257, 384 P.2d 649 (1963); Tyre v. Aetna Life Insurance Co., 54 Cal.2d 399, 6 Cal. Rptr. 13, 353 P.2d 725 (1960); Polk v. Polk, 228 Cal.App.2d 763, 39 Cal.Rptr. 824, 835 (1964).

We, accordingly, adopt the view that, if the husband in this case has made a testamentary disposition to the wife, or there is other provision for her, either through will, joint tenancy, intestacy or trust instrument which brings to her upon his death at least as much in value as one half of all of the community and other jointly acquired property (including therein the proceeds of the life insurance policy here in question), then there has been no "fraud" upon her rights and the designation of beneficiary should stand effective. To the extent that she did not receive her share, there would be a constructive fraud upon her rights and the designation would be ineffective to the extent of such constructive fraud.

We regard the interest of the insured in this policy prior to his death to be community in nature, for the reason that, though this policy at one time was paid upon by the husband while divorced, it is

---

it. Conceivably the husband could intend that the donee is to have the specific property donated and that the wife should be reimbursed for the value of her interest; that is, he could intend that the burden of the gift should ultimately be borne by his one-half of the entire community assets. Perhaps it has sometimes been assumed that the husband does intend to 'defraud or injure' his wife unless he intends that she shall eventually be compensated in one way or another for the value of her interest in the thing donated." Huie, Community Property Laws as Applied to Life Insurance, 18 Tex.L.Rev. 121, 130–31 (1940).

2. There are occasions when a surviving spouse is entitled as a matter of law to a portion or all of the deceased's one half of community estate, despite testamentary disposition. See, e. g., A.R.S. §§ 14–501, 14–514 and 14–517. Complications arising from these homestead, surviving spouse and family allowance statutes are not presented here and we leave their affect upon the doctrine herein announced to the time when they may be "* * * met with on the highway of adjudication." See Salinas v. Kahn, 2 Ariz.App. 181, 194, 407 P.2d 120 (1965).

a term policy and had no monetary value at any time until the death of the husband. As stated in 1 Appleman, Insurance Law and Practice (1965) § 3, at 14:

> "A true term contract would have no loan or cash value, or, in fact, any value except in the event of the death of the insured prior to the expiration of the contract."

Upon the death of the insured, the value of a term policy purchased with community funds is measured by the proceeds of the policy, and not the premiums paid thereon. Davis v. Prudential Ins. Co. of America, supra, 331 F.2d at 350–351.

■ We, therefore, do not regard the proceeds of this policy to be property which must take on community or separate character depending upon the time of the initiation of the insurance contract, as in Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755 (1939). Nor are we concerned with analyzing the legal metamorphosis that may have occurred at the time of the divorce, when no mention was made of this policy in the decree. Community funds paid for *all* of the coverage that resulted in these particular proceeds. The fact that the husband's separate estate paid a premium for a risk long since expired without loss should not give his separate estate any vested interest in these proceeds.

■ Inasmuch as this record leaves it unclear as to whether the designation here wrongfully deprived the wife of her moiety, the summary judgment rendered must be set aside. There is one other question that may arise on remand. Even though under the test we have laid down the designation of the beneficiary here may be found to be in whole or in part "in fraud" of the wife's rights, she could not complain if she consented to the designation made. See Jue v. San Tong Jue, 163 Cal.App.2d 231, 329 P.2d 560, 570–573 (1958); 41 C.J.S. Husband and Wife § 534, at 1153, 1156.

In this connection a statutory provision is pertinent:

> "C. In any life or disability insurance policy issued upon the life of a spouse, the designation made by such spouse of a beneficiary in accordance with the terms of the policy shall create a presumption that the beneficiary was so designated with the consent of the other spouse, but only as to any beneficiary who is the child, grandchild, parent, brother or sister of either of the spouses. The insurer may in good faith rely upon the representations made by the insured as to the relationship to him of any such beneficiary."

A.R.S. § 20–1128, subsec. C.

■ Under this statute, it is arguable that it should be left to the trier of fact to determine whether this wife had consented to the designation of her spouse's son as beneficiary regardless of the objective evidence to the contrary. Our Supreme Court has indicated that presumptions established by statute are entitled to greater weight than presumptions arising out of common-law rules of evidence. Arizona Corporation Commission v. Reliable Transportation Co., 86 Ariz. 363, 374, 346 P.2d 1091 (1959); and see Udall, Arizona Law of Evidence § 193, at 427.

■ But here, we are only concerned with whether a summary judgment should have been granted. The only evidence to rebut the statutory presumption is the uncorroborated affidavit of the wife herself. We hold that the disposition of this issue, which pertains largely to the subjective state of mind of a party, by a summary judgment was erroneous. Subin v. Goldsmith, 224 F.2d 753 (2d Cir. 1955); Alabama Great Southern Railroad Co. v. Louisville & Nashville Railroad Co., 224 F.2d 1, 50 A.L.R.2d 1302 (5th Cir. 1955); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); Executive Towers v. Leonard, 7 Ariz.App. 331, 439 P.2d 303 (1968); State v. Ashton Co., 4 Ariz.App. 599, 422 P.2d 727 (1967); and see Lujan v. MacMurtrie, 94 Ariz. 273, 278, 383 P.2d 187, 190 (1963); and com-

pare Reidy v. Almich, 4 Ariz.App. 144, 148, 418 P.2d 390, 394 (1966).

Judgment reversed and the cause remanded to the superior court for proceedings not inconsistent herewith.

HATHAWAY, C. J., and NORMAN S. FENTON, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCK-ER having requested that he be relieved from consideration of this matter, Judge NORMAN S. FENTON was called to sit in his stead and participate in the determination of this decision.